**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARVIN ARMANDO RAMIREZ-SOLIS, )<br><br>Petitioner, )<br><br>v. )<br><br>WARDEN DESERT VIEW FACILITY, <u>et</u> <u>al.</u>, )<br><br>Respondents. ) | Case No. ED CV 26-2610 FMO (KES)<br><br>**ORDER RE: APPLICATION FOR PRELIMINARY INJUNCTION** |

On May 14, 2026, Marvin Armando Ramirez-Solis ("petitioner") filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 against the Warden of the Desert View Facility of the Adelanto Detention Center; Markwayne Mullin, Secretary of the U.S. Department of Homeland Security ("DHS"); and Todd Blanche, Acting Attorney General of the United States (collectively, "respondents"), seeking his immediate release. (<u>See</u> Dkt. 1, "Petition" at ¶¶ 22-24). Petitioner also filed an <u>Ex</u> <u>Parte</u> Application for Temporary Restraining Order ("TRO"). (<u>See</u> Dkt. 8, "TRO Application"). Because the standards for granting a TRO and a preliminary injunction are the same, <u>see</u> <u>Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.</u>, 240 F.3d 832, 839 n. 7 (9th Cir. 2001), the court converted petitioner's TRO Application to an application for a preliminary injunction ("PI Application"). (Dkt. 9, Court's Order of May 18, 2026, at 1). Having reviewed and considered all the briefing filed with respect to petitioner's PI Application, the court finds that oral

argument is not necessary to resolve the PI Application, see Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## BACKGROUND

Petitioner entered the United States from El Salvador on March 5, 2011, near Hidalgo, Texas. (See Dkt. 1, Petition at ¶ 2). Upon entry, he was detained by DHS and Immigration and Customs Enforcement ("ICE") at the Willacy Detention Center. (See id.); (Dkt. 1-1, Exh. A, Notice to Appear at ECF 2). Shortly thereafter, petitioner underwent a credible fear interview, and a DHS officer determined that petitioner had a credible fear of torture if removed to El Salvador. (See Dkt. 1, Petition at ¶ 3); (Dkt. 1-1, Exh. A, Notice to Appear at ECF 2); (Dkt. 1-1, Exh. B, Record of Determination at ECF 5-13).

On June 7, 2013, petitioner was released under an Order of Supervision. (See Dkt. 1, Petition at ¶ 4); (Dkt. 1-1, Exh. D, Order of Supervision at ECF 19-22). On July 7, 2015, an immigration judge ordered petitioner removed to El Salvador, but also granted petitioner's application for withholding of removal. (See Dkt. 1, Petition at ¶ 3); (Dkt. 1-1, Exh. C, Order of Immigration Judge at ECF 16). Petitioner also obtained a work authorization and financially supports his partner and elderly mother. (See Dkt. 1, Petition at ¶ 1, 5, & 7). Petitioner has no criminal history. (See id. at ¶ 9). For the past 13 years, petitioner has complied with all the requirements of his Order of Supervision, including attending all check-ins. (See id. at ¶ 4).

On May 8, 2026, petitioner appeared for his routine check-in at the Los Angeles ICE Field Office. (See Dkt. 1, Petition at ¶ 10). During his check-in, ICE officers re-detained petitioner without any notice or an opportunity to be heard prior to this re-detention. (See id.). Petitioner has remained in custody at the Desert View Facility of the Adelanto Detention Center ever since. (See id. at ¶ 11). As of the filing of his Petition, petitioner had not had a custody redetermination hearing before a neutral arbiter. (See id. at ¶ 12).

Petitioner asserts the following claims in his Petition: (1) violation of procedural due process under the Fifth Amendment's Due Process Clause; and (2) violation of respondents' statutory authority under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, et seq. (See Dkt. 1, Petition at ¶¶ 35-42).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 65 provides courts with the authority to issue preliminary injunctions and TROs.  See Fed. R. Civ. P. 65(a) & (b).  The purpose of a preliminary injunction "is to preserve the status quo and the rights of the parties until a final judgment" on the merits can be rendered, see U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010), while the purpose of a TRO is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing" for the preliminary injunction.  Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty., 415 U.S. 423, 439, 94 S.Ct. 1113, 1124 (1974)).  The standards for a TRO and a preliminary injunction are the same.  See Stuhlbarg Int'l Sales Co., 240 F.3d at 839 n. 7; NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P., 788 F.Supp.2d 1111, 1117 (C.D. Cal. 2011) (same).  "Like a preliminary injunction, a temporary restraining order is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'"  Six v. Newsom, 462 F.Supp.3d 1060, 1067 (C.D. Cal. 2020) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22, 129 S. Ct. 365, 376 (2008)).

A petitioner seeking a preliminary injunction or TRO must establish that:  (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.  Winter, 555 U.S. at 20, 129 S.Ct. at 374.  Under the Ninth Circuit's "sliding scale" approach, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another."  All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).  "For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits."  Id.  The last two Winter factors "merge when the Government is the opposing party."  Nken v. Holder, 556 U.S. 418, 435, 129 S.Ct. 1749, 1762 (2009).

/ / /

/ / /

3

**DISCUSSION**

I.       LIKELIHOOD OF SUCCESS ON THE MERITS.[1]

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693, 121 S.Ct. 2491, 2500 (2001). "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." Trump v. J. G. G., 604 U.S. 670, 673, 145 S.Ct. 1003, 1006 (2025) (internal quotation marks omitted). Although "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process[,]" Demore v. Kim, 538 U.S. 510, 523, 123 S.Ct. 1708, 1717 (2003), due process "requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127, 110 S.Ct. 975, 984 (1990) (emphasis in the original).

Petitioner's procedural due process claim involves two steps: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Fernandez Lopez v. Wofford, 2025 WL 2959319, *3 (E.D. Cal. 2025) (internal quotation marks omitted). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600 (1972). To determine what protections due process demands in a given situation, courts consider the: (1) private interest that will be affected by the official action; (2) risk of erroneous deprivation of such interest through the procedures (if any) used, and the probable value of additional safeguards; and (3) government's interest, including the function involved and the burdens that would be imposed by additional process. See Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903 (1976).

---

[1] Respondents' Answer does not address the merits of petitioner's claims. (See, generally, Dkt. 11, Answer). As the court cautioned in its prior order, "[f]ailure to address each argument/claim raised in the Petition and/or PI Application may be treated as respondents conceding the merits of petitioner's argument/claim and/or that petitioner is entitled to the relief sought." (Dkt. 9, Court's Order of May 18, 2026, at 1).

4

A.    Petitioner Possesses a Protected Liberty Interest.

Petitioner invokes "the most significant liberty interest there is – the interest in being free from imprisonment." Velasco Lopez v. Decker, 978 F.3d 842, 851 (2d Cir. 2020); Zadvydas, 533 U.S. at 690, 121 S.Ct. at 2499 ("Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects."). While "the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the . . . conditions of release." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. 2025) (internal quotation marks and alterations omitted). Accordingly, "[c]ourts throughout the Ninth Circuit have concluded [that] individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond." He v. Lyons, 2026 WL 280074, *3 (N.D. Cal. 2026). In short, petitioner has a protected liberty interest in remaining out of custody absent a showing that he poses a risk of flight or danger to the community. See, e.g., Meneses v. Santacruz, 811 F.Supp.3d 1158, 1163 (C.D. Cal. 2025) (finding petitioner who was released pursuant to an Order of Supervision had a constitutionally protected liberty interest in remaining out of ICE custody); Karangolian v. Marin, 2026 WL 1082312, *2 (C.D. Cal. 2026) (same); Espinoza v. Kaiser, 2025 WL 2675785, *10-11 (E.D. Cal. 2025) (finding that petitioners released from immigration detention on their own recognizance had "substantial private interests in being out of custody"); Noori v. Larose, 807 F.Supp.3d 1146, 1157, 1164 (S.D. Cal. 2025) (finding that petitioner who was paroled from immigration detention under § 1182(d)(5)(A) had protected liberty interest in remaining out of custody).

B.    Risk of Erroneous Deprivation is High.

Due process requires that respondents provide petitioner with notice and a pre-deprivation bond hearing prior to the revocation of his Order of Supervision. See, e.g., Ramirez Tesara v. Wamsley, 800 F.Supp.3d 1130, 1137 (W.D. Wash. 2025) (granting TRO and ordering that petitioner, who was re-detained months after the expiration of his parole, "should be released and only re-detained after a hearing [in] front of an immigration judge"); Valdez v. Joyce, 803

F.Supp.3d 213, 219 (S.D.N.Y. 2025) ("In the context of revocation of civil release, an individual whose release is sought to be revoked is entitled to due process such as notice of the alleged grounds for revocation, a hearing, and the right to testify at such a hearing.") (internal quotation marks omitted).  Here, there is no evidence, nor even a suggestion, that respondents employed any procedural safeguards before detaining petitioner.  (See, generally, Dkt. 11, Answer).

In addition, although ICE issued a Notice of Removal on May 12, 2026, notifying petitioner that it intended to remove him to Mexico, (see Dkt. 11, Answer at 2), respondents have offered no evidence demonstrating that any pre-deprivation procedures have been provided.[2]  (See, generally, id.).  Indeed, respondents must provide sufficient notice and a meaningful opportunity for petitioner to raise any fear-based claims before removal.  See Escobar v. Chestnut, 2025 WL 3687639, *4 (E.D. Cal. 2025) ("In the context of fear-based claims specifically, noncitizens have a Due Process right to have their fear-based claims for relief from removal to third countries heard by a neutral adjudicator before the removal can be effectuated.") (internal quotation marks omitted); Najjar v. Lynch, 630 F.Appx. 724 (9th Cir. 2016) ("In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country.").

In short, the court finds that the risk of an erroneous deprivation of petitioner's liberty interest is high.  See, e.g., Fernandez Lopez, 2025 WL 2959319, at *6 ("[T]he risk of an erroneous deprivation [of liberty] is high where, as here, [the petitioner] has not received any bond or custody redetermination hearing.") (internal quotation marks omitted); Escobar Salgado v. Mattos, et al., 2025 WL 3205356, *24 (D. Nev. 2025) ("The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain

---

[2] On May 18, 2026, ICE issued petitioner an additional Notice of Removal advising him that he was scheduled for removal to Mexico on May 26, 2026.  (See Dkt. 11, Answer at 2).  ICE also booked a flight for that date to effectuate his removal.  (See id.).  However, as the court understands the record, there is no final order authorizing petitioner's removal to Mexico or to any other third country other than his native country, El Salvador.  (Dkt. 1-1, Exh. C, Order of Immigration Judge at ECF 16).

Petitioners without any individualized showing of why their detention is warranted, nor any process for Petitioners to challenge the exercise of that discretion.").

C.     Respondents' Interest Does Not Outweigh the First Two Factors.

"As to the third and final Mathews prong, the Attorney General's discretion to detain individuals . . . is valid where it advances a legitimate governmental purpose, such as ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." J.U. v. Maldonado, 805 F.Supp.3d 482, 498 (E.D.N.Y. 2025) (internal quotation marks and alterations omitted). Again, respondents fail to address this factor in their Answer. (See, generally, Dkt. 11, Answer). In any event, "the government points to no new facts that would undermine its prior determination that [petitioner] presents no risk of danger to the community." Sun, 2025 WL 2730235, at *6. Indeed, petitioner appears to have complied with all the conditions of his Order of Supervision, including all reporting requirements, (see Dkt. 1, Petition at ¶¶ 4 & 9), and there is nothing in the record to establish that petitioner poses a flight risk or a danger to the community.

In short, because each of the Mathews factors favors petitioner, the court finds that he has shown a likelihood of success on the merits of his procedural due process claim.[3]

II.    LIKELIHOOD OF IRREPARABLE HARM.

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690 (1976)); see Hernandez v. Sessions, 872 F.3d 976, 994-95 (9th Cir. 2017) (recognizing the "irreparable harms imposed on anyone subject to immigration detention" and holding that plaintiffs had "established a likelihood of irreparable harm by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time"). Where "an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." Warsoldier v. Woodford, 418 F.3d 989,

---

[3] In the interest of judicial economy, and because the court grants petitioner's requested relief on procedural due process grounds, it need not reach petitioner's remaining claims for relief.

1001-02 (9th Cir. 2005) (internal quotation marks omitted).  Here, there is no doubt that petitioner has been and will continue to be irreparably harmed by the continued deprivation of his liberty in violation of his due process rights.

III.    BALANCE OF THE EQUITIES AND PUBLIC INTEREST.

The final two merged factors likewise weigh heavily in favor of petitioner.  Although the government has a compelling interest in the enforcement of its immigration laws, that interest cannot justify the violation of petitioner's constitutional rights.  See Index Newspapers LLC v. U.S. Marshals Serv., 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (internal quotation marks omitted); Vargas v. Jennings, 2020 WL 5074312, *4 (N.D. Cal. 2020) ("Just as the public has an interest in the orderly and efficient administration of this country's immigration laws . . . the public has a strong interest in upholding procedural protections against unlawful detention.") (internal quotation marks and citation omitted); Valle del Sol Inc. v. Whiting, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law[.]") (internal quotation marks omitted).

### CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1.  Petitioner's PI Application **(Document No. 8)** is **granted** as set forth in this Order.

2.  Respondents shall release petitioner Marvin Armando Ramirez-Solis (A# 201-109-128) forthwith with all personal effects seized from petitioner, including all identification documents and immigration documentation.  Respondents shall not impose any release conditions (e.g., electronic monitoring) on petitioner that were not in place prior to petitioner's arrest or detention in this case unless deemed necessary at a future pre-deprivation bond hearing.

3.  Respondents shall file with the court a Notice of Compliance within three (3) calendar days following the filing date of this Order.

4.  Respondent shall not re-detain petitioner absent at least seven (7) days individualized notice describing the change in circumstances necessitating petitioner's arrest and/or detention, and a pre-deprivation bond hearing before a neutral decisionmaker at which the government bears

the burden of proving petitioner is a flight risk or a danger to the community, and that there are no combination of conditions that will reasonably assure petitioner's appearance and/or the safety of any other person in the community.  If petitioner is again placed into detention in this District following proceedings in this case, respondent shall not transfer or remove petitioner from this District unless executing a final order of removal issued against petitioner.

5. Should respondents take steps to remove petitioner to a third country, respondents shall not remove petitioner to any third country without providing petitioner and his counsel written notice and affording petitioner a meaningful opportunity to seek any available fear-based protections or relief.

6.  The parties shall meet and confer no later than **July 10, 2026**, to discuss what, if anything, remains to be done with respect to the Petition (Dkt. 1).

7.  Should the parties agree there is nothing further for the court to decide, they shall, no later than **July 13, 2026**, file a stipulation and proposed order either dismissing the case or granting the Petition and the entry of judgment.

8.  If the parties disagree as to whether anything remains to be decided with respect to the Petition, then the parties shall file a joint status report.  The status report shall, at a minimum, include the parties' positions on the following:  (1) what issues remain for decision; (2) with respect to each issue, whether both parties intend to stand on briefing already filed, and if so, pointing the court to the specific docket entries and page numbers that provide the relevant briefing on each of the issues that remain; (3) if either party believes further briefing is necessary, proposing a schedule for such briefing and lodging a proposed briefing order; and (4) whether the parties agree to consent to the assigned Magistrate Judge for all purposes.[4] **If mootness is one of the issues that remain for decision, the parties shall address the issue in the joint status report.**  The parties' joint status report shall be filed no later than **July 13, 2026**.  Failure to file a stipulation or

---

[4]  If the parties consent to the assigned Magistrate Judge, they may file a Consent to Magistrate Judge (form CV-11D) in lieu of a joint status report by the above deadline.

a joint status report by the deadlines set forth above may be deemed as a concession that no further relief is available and that the action may be dismissed without prejudice.

Dated this 2nd day of July, 2026.

/s/
Fernando M. Olguin
United States District Judge